Please be seated, ladies and gentlemen. The first case for argument today is Noeller v. United States. Mr. Broek, in Appeal No. 18-2723. May it please the court, my name is James Tenbrook and I represent the petitioner Rodolfo Burgos this morning. I think it's appropriate to get into a little bit of the procedural history. On February 20, 2015, the petitioner was arrested and detained by the Department of Homeland Security for having entered the country without a visa. Shortly after that, in June 2015, while his immigration proceedings were pending, he learned that a warrant was issued by a Mexican court for his arrest in connection with the death of his former girlfriend. He hired some attorneys in Mexico. He obtained what I guess the Spanish word for it is an amparo, but the English definition is a definitive suspension of that warrant. That took place on September 22 or September 29, 2015, so it was only a few months after June. This is all while his immigration proceedings are pending. I have a question about the amparo. Has an actual Spanish translator looked at it? Because it reads very much like it was punched into Google Translate and then come out. I mean, it's kind of difficult to figure out what it means. I agree. I'm not aware of who translated it, but I've seen many Mexican legal documents translated, and they all translate in a very stilted way into English because they tend to be very wordy. Didn't you submit this document to the federal court? The translation? Yes, we did. And you don't know who translated it or how it was translated? Your brief talks about Google Translate in a footnote, but like Judge Barrett, I'm a little mystified. No, well, I think it was translated by somebody in our office. I think it was translated by somebody in our office. Then how come the footnote refers to Google Translate? I think what Ms. Espinosa, the attorney, was trying to demonstrate is that there was some error with respect to the translation, and then she got it translated. I think that the phrase that we're talking about is, quote, Well, no. Quote, So that's the controlling language. That's what I think that's what you're referring to, if I'm not mistaken. Is there any other part of that language that you would like me to clarify any further? The document, I thought, indicated that Mr. Knoller and the other man who was the subject of this order would have to submit money for the benefit of the Mexican court. There's another part of that order. So it makes it look as if, if you get them back to Mexico, they could be released on bond. My understanding, I did not see anything with respect to money, but, and I'm looking at it right now. The benefit granted produces immediate effects but stops if the moving party does not comply with these obligations that the judge imposed pursuant to the provisions of Article 138 of the Law of Protection to be known. A, each will display a guarantee within the period of five days in the amount of 10,000 pesos national currency to ensure they can be returned to the responsible should the protection be denied. That's a couple paragraphs after what you were reading. Okay, let me find it. Was this where it says first, second, and then notify? Is it somewhere in there? I'm, no. Why shouldn't we simply let the Mexican courts sort out the meaning of their own order? Well, I think. Which seems to be a mystery to us. Well, I don't think it's, I don't think it's, I don't think it is mysterious. The order that I'm looking at, and I'm trying to find this thing about the 10,000 pesos but I can't, but the part that I'm looking at talks about a definitive suspension, and it pertains to, you know, the previous warrant that was issued. So, it casts doubt on whether or not there's a valid warrant in this case. And that's part of what. Is there any doubt that the warrant that was submitted in the government's request for expedition was valid when issued? I don't think we're contesting that, no. Okay. We've got case law from the Ninth Circuit, I believe, in the Fowley case, and a couple of other cases suggesting that these Mexican Amparo proceedings, as they may affect extradition, ought to be basically left to the Mexican courts. Could you address those? The Fowley case in particular? I'm actually not familiar with that case, so I can't. I cited it in the government's brief, but all right. Counsel, let me ask you a question about our authority. You know, we have the authority to consider whether the magistrate had jurisdiction on habeas review. We have the authority to consider whether the offense was in the treaty and the probable cause issue. So, where do we get our authority to examine the validity, the ongoing validity of the warrant? Well, that's discussed, I believe, in the case of Asarsen. Asarsen was a case where the petitioner had asserted that, well, the Swedish government did not provide charges. And then the court said, and it was actually Judge Bauer's opinion, that said, well, the treaty doesn't require charges, it just requires a warrant. So a warrant is a very substantive part of whether or not extradition can go forward. It's a required document. Okay, but the scope of habeas review confines us to those three issues. So I'm asking kind of which bucket would this question fit within? I think it falls into the second bucket, as far as... Is the offense within the treaty? Sure. I mean, that's broadly reading it and broadly reading it also under a matter of BERT. A matter of BERT said if there's a constitutional issue involved in a case, then the court can look at it. And here, the constitutional issue is whether or not there was probable cause to arrest. And so that's how we can look at it. But even if it doesn't fit in the second bucket, I think that when you read the treaty and it says a warrant must be provided, I mean, isn't it safe to presume? I mean, it's a very safe presumption to say that the warrant has to be valid. But you told Judge Hamilton that the warrant was valid, that there was no dispute that the certified warrant that was presented to the magistrate judge. It's not clear to me where the magistrate judge gets the authority to consider subsequent develops in Mexico. I mean, what if the Mexican legislature passed a statute that called into doubt whether this was still an offense? Would the magistrate delve into that, too? I think... Here, I think you said, well, the warrant's valid. The warrant from June is valid, but it was no longer valid as of September when the empire was entered. So that's why I'm saying it's not valid. So that should be fairly clear that the treaty requires a warrant. It's safe to presume that that warrant must be valid. Yes, the one in June was valid. But with the entry of the emparo, that casts doubt on it. That says, hey, this is definitively suspended. So that's our argument. And that, I think, should carry the day. Well, I understand that argument. But that would seem to require fairly definitive evidence, even assuming we can delve into this at all. And as I say, Fowley and the issues that my colleague is raising raise questions about whether we should get into that at all. But to get into it, we would need to at least, I would think, start with solid evidence from your side undermining the validity of the warrant. Well, let's talk a little bit about the burden here. I mean... The government has come forward with the basics, with what's needed under the treaty. Right. And you were agreeing correctly that the original warrant was valid. So where's the solid evidence that things have changed? And if they have changed, why hasn't the Mexican government told us about this? Well, I think the Mexican government ignored the emparo. And furthermore, part of our overall claim here is that he's seeking convention against torture relief and withholding because he believes if he goes back, he's going to get killed. Because the gangs erroneously believe that he killed his ex-girlfriend. So there's very little trust of what the Mexican government is going to do here. And going back to what I understand, there is a burden of proof here. But I think that the government has to show sufficient evidence that the magistrate judge could enter an extradition order. I think what we've tendered casts doubt on that and casts enough doubt that they have to explain it. And they didn't. And they say that there was this affidavit or they present an affidavit or letter from this Mexican prosecutor. And nowhere in that statement or affidavit does it refer to the emparo. I mean, it very easily could have been addressed there. They didn't address it. So this definitive suspension, it casts enough doubt on this warrant such that the extradition order should not have been entered. Now, I guess I should correct myself to some degree here. You're asking me whether or not the June 2015 warrant was valid. I think on its face it was valid. But when you look at the probable causes to establish it, you see that we get to our next issue, which is whether there really was sufficient probable cause. And as we've argued in the briefs fairly extensively, you can see that the only witness to establish the probable cause is a minor who was spoken to 15 hours after the incident, brought by her mother. Her testimony is, and like you said, Judge, it's hard to decipher what people are saying. Take a look at this affidavit establishing probable cause here. That's even worse mess. Counsel, I'm going to back up. Probable cause is a low standard. But I want to back up and ask you a question about the party that you sued. So in a habeas proceeding, you have to sue the immediate custodian. And you did that in your petition before the district court. But for reasons, kind of looking at the docket and talking to the clerk's office, that I'm not able to figure out, before us, you've named the United States as the party, rather than the immediate custodian. Why? Why did you switch? I think the United States would be also a party. No, we've been very clear. We have very clear precedent saying that the only appropriate party is the immediate custodian. And the United States, writ large, is not the custodian. The custodian below you identified the United States Marshal as the custodian, which would be correct, if that's who's holding him. Maybe it was a clerical error that we didn't continue to include the name of the custodian. Because I think that if we named the custodian in the habeas, there's no reason to drop that as we're going forward. I don't think that we lack jurisdiction because of this, because you named the appropriate party below. Although, if you had sued the United States all along, we probably would have to dismiss it. But my question now is, if we're going to correct this in the opinion, let's imagine that we agreed with you. We can't issue a writ. We would issue a writ against a person, against a custodian, not against the United States. So we would need to change the heading ourselves. And I don't know who. I mean, has the custodian changed? I mean, we don't know. I mean, I could file a motion to ask this court for leave to change the heading, because I think you're right. It should have the custodian. So I appreciate that. Okay. I think I'm going to sit down now. You've got time for rebuttal then. And for the government and or custodian, Mr. Pruitt. Thank you, Your Honor. May it please the court, counsel. The appellant here was properly certified as extraditable to Mexico for the murder of his girlfriend, Lorena Carrillo. Now, on habeas review, there's only one issue that's been properly presented to the court, and that is the issue of whether there was sufficient probable cause to support the charge. The other two elements that are open on habeas review, the magistrate's jurisdiction and whether the offense charges in the treaty have not been raised. I'll briefly touch on the issue of probable cause. There was more than sufficient evidence to meet that very low standard. There was testimony from an eyewitness to the shooting, a witness who heard the shots fired and came out and saw the appellant flee the scene. And there was corroborating forensic evidence in the form of the examination by the medical examiner, two shots to the head, and also shell casings and a bullet. And I do want to touch on that briefly. The appellant makes it seem as if there were three recovered bullets and that that is inconsistent with the testimony of two shots being fired. In fact, if you go back and look at the forensic report and the investigative report in the record, two spent shell casings were found and one fired bullet. The two shell casings are consistent with two shots being fired. They recovered one spent bullet but didn't find the other one. So this is not inconsistent with the testimony of the eyewitness. This is, in fact, consistent with the testimony that two shots were fired. Even if, though, it was somehow potentially inconsistent, I don't think that in and of itself would defeat probable cause determination here. When the magistrate had the testimony that he had. With respect to the warrant issue, again, the treaty simply requires presentation of a warrant. That is what was done. To impose any further requirement about establishing the validity of that warrant based on some collateral proceedings in Mexico would put a burden on Mexico that is not contemplated by the treaty, would violate the rule of non-inquiry. Even if this was warranted, as the court had noted, the documents submitted are far less than clear as to what they purport to do. Mr. Proat, did you raise the issue of the authenticity of those documents in the district court? We did raise the issue that they did not appear to be properly authenticated. Honestly, though, Your Honor, I think we put more focus on the fact that they are essentially unintelligible. It is not clear what.  Yes, Your Honor. Because you have raised here the issue of authentication, the defense said, or Mr. Knoller said in his reply brief, he did not raise that in the district court. Can you direct us to where you did raise it? I do not have a record site in front of me, Judge, where we raised the authenticity. In writing or orally? Do you remember? My memory, Your Honor, is that it was orally at the hearing, but I do not have a record site for it, Your Honor, so I do not want to misspeak. Okay. Your Honor, in addition to the August 26, 2015 order indicating that he would be arrested but bond might be available, I do want to point out that the second order they point to, the September 22 order, 2015, has seemingly contradictory language in it. In one point, and this is on page 32 of that document, it says definitive suspension is hereby denied, suggesting that the relief has been denied. And then it goes on on the next page in saying that there is definitive suspension, but for the sole effect that if he is detained, he'll be brought before the court for some determination, which again seems to suggest that the only relief that might have been granted is that if he is arrested pursuant to the warrant, he'd be brought before the Imperial Court. But again, this is our interpretation based on documents that on their face are contradictory and impossible to understand. That cannot possibly be a basis for the magistrate or any other court trying to interpret what occurred there. Does the U.S. government acknowledge that Amparo proceedings happened in this case? It appears that they happened based on the documents that are submitted, Your Honor, but those documents are the only evidence that we have. We don't have the full record of those proceedings, but it does seem that an Amparo proceeding did occur, Your Honor. Yes. So maybe you've already answered this, but why not ask Mexico under these seemingly unusual circumstances to just reconfirm the arrest warrant? Your Honor, this is not a matter in the record, but when this issue was raised in front of the Immigration Court, an inquiry was made through non-diplomatic channels asking the Mexican government to confirm whether the warrant was still valid. And through, again, non-diplomatic channels, formal channels, they confirmed that it was. Then that statement again, though, was made in the submission that Mexico made in support of their formal extradition request. In addition to providing the warrant, they provided a sworn statement from a prosecutor in Mexico stating that the warrant was still, as of that date, which was two years after the Amparo proceeding, the warrant was still valid and enforceable. I acknowledge they didn't specifically reference the Amparo proceeding, but there was that additional statement that was provided beyond their treaty obligation of simply presenting the warrant. Do you have anything to add to my custodian question? I believe, Your Honor, it's correct in your assessment that the proper named party should be the custodian, which is, in this instance, the United States Marshal. Your Honor, finally, on the last issue, there's nothing in the treaty, the extradition statutes, or the case law that vests in the appellant the right to have his immigration removal proceedings reviewed here in this context, which is a habeas from the extradition. And I do want to make sure the court is aware the appellant has a forum to raise the concerns that he mentions in his brief regarding Convention Against Torture humanitarian concerns, and that's with the Secretary of State. There's currently a stay entered by this court on any extradition consideration by the Secretary of State, but at such times that stay is lifted, the full record from the immigration court that was already produced can be provided to the Secretary of State. Additional information can be provided to the Secretary of State, and the Secretary of State will be obligated to consider that information. And simply note that the Secretary of State is far better suited to consider and resolve those kinds of concerns than the Board of Immigration. Obligated by statute? They are, it's my understanding, obligated by statute. I didn't have a cite for you, Your Honor, I apologize. But I can certainly tell you, Your Honor, that if presented with that information, it will be considered. The Secretary of State will always consider that information when presented. Do these matters go personally to the Secretary of State? Your Honor, I think as with many matters like this, there's a staff within the Secretary of State's office that considers and evaluates them. I don't know what role the Secretary individually would have. And as we'll probably be discussing in the next case, very little judicial review, if any, of the Secretary of State's decisions. That is correct, Your Honor, this is viewed as something that is solely for the executive to decide. And I also want to note in that regard, Your Honor, that in addition to having unique knowledge and competence with respect to foreign relations and the conditions in the foreign country, the Secretary of State also has broader tools that it can utilize in this context. For example, if there were concerns and the Secretary thought they were valid concerns, the Secretary could condition the extradition on conditions that it thought were suitable to protect the person. So there are tools available to the Secretary if it believes that valid concerns have been raised, which would also include denying extradition if it thought the concerns were truly valid. I've understood your position in the brief, Mr. Pruitt, to be that the extradition court here in the requested country really can't dig into the credibility of the evidence being submitted to support the arrest warrant. I guess I'm wondering just how far that claim goes. For example, if the target of the request could provide some evidence, for example, that witness statements had been obtained by coercion or torture in the requesting country. Your Honor, I think that evidence that goes to, such as that you mentioned, that might go to something like that, it would depend on the specific case and how clear cut the evidence was. I think generally, again, that is evidence that would want to be presented to the requesting country in the courts there. I don't think that would fall within the realm of explanatory evidence that is allowed to be presented before the extradition court. I think that would be a limit to that, Your Honor. I think, though, that what the magistrate and the extradition court certainly can do is look at the statements on their face and decide how much weight should be given. If there are obvious defects in the statement, such as clear from the face of the statement, the witness could not possibly have had the foundation to observe the things that they say they observed. That's something the magistrate could weigh. If there are no further questions, we'd ask that the judgment of the district court be affirmed. Thank you very much, Mr. Pruitt. Thank you. Mr. Tenbrough? Judge, with regard to the question you just asked him about if there was some evidence of coercion on an affidavit within that case within Mexico, let's say, I think he's wrong. The treaty itself says in Article 10, subparagraph 3, when a request for extradition relates to a person who has not yet been convicted, it shall be accompanied by, A, a certified copy of the law. Could you speak into the microphone? That's making the recording. I'm sorry. Thank you. When a request for extradition relates to a person who has not yet been convicted, it shall be accompanied by, A, a certified copy of the rest warrant. That goes to what we were talking about earlier. And, B, evidence which in accordance with the laws of the requested party would justify the apprehension and commitment for trial of the person who sought the events to be committed there. So I think it's clear that that is relevant. Now, with respect to Mr. Pruitt's representation that somehow the continued validity of the warrant after the amparo was discussed in the Immigration Court, to start speaking outside the record like that, I hope this Court doesn't give that much weight. Now, with respect to the last issue, and that is with respect to whether the Board, you know, improperly abdicated its authority to decide Mr. Knoller's Convention Against Torture claim. I mean, my understanding is the process the Secretary of State takes a look at the extradition order. It takes a look at whatever has occurred at the EOIR, Immigration Court. Now, it certainly, to me, seems that Mr. Knoller has a vested interest in having an order from that court explaining its reasons and so forth that would lend some reasonable persuasive authority that he really shouldn't go back. But without an order, there's nothing. Like, it's quite unfair, I think, to the petitioner here to not have something from the Immigration Court saying something. I mean, Mr. Pruitt suggests, well, they could look at the record, but in reality, having an order explaining reasons why he's protected under Convention Against Torture certainly carries much more weight. And given that he's been, you know, contesting these proceedings and trying to get an order, there's definitely a vested right to that, I think. So the case poses an interesting problem about this relationship between extradition and immigration proceedings. The government makes the point that if you're right, then somebody here who's the target of an extradition request has this ability to freeze extradition by seeking asylum, for example, or protection under the Convention Against Torture that is not available to U.S. citizens or lawful permanent residents here because they don't need or have access to asylum claims or Convention Against Torture claims before immigration authorities. Well, I think that, I mean, that may be true. But the point is, if somebody's making out a claim that, I mean, let's say a U.S. citizen says, hey, they're going to get jailed over there. They're not going to get killed. You know, here we're talking about Convention Against, it's not an easy case to make out, as this court well knows. So we're talking about somebody who's going to get killed and has proved pretty substantially that they're going to get killed. So I think that, you know, that's important. And so if that's the case, then that's the case. Well, what do you think about the opportunity to make those claims to the Secretary of State,  I'm sorry, Judge, I didn't hear you. Well, the claims that he's raising in the removal proceeding, the CAT claims, et cetera, are similar to the ones that he would press before the Secretary of State in seeking the Secretary of State, in asking the Secretary of State not to extradite him. Well, I'm not so sure. And the government says that the Secretary of State, you know, I don't know that the Secretary of State is obligated, but that the government says the Secretary of State will consider those concerns. So why isn't that good enough? I'm not sure if he even gets a right to a hearing with the Secretary of State. I mean, maybe he could submit a letter or something, but, you know, I'm not sure if he gets a right to a hearing. So any discussion with the Secretary of State, I think, is presumed. So, you know, maybe an unfair presumption, I think. But, anyway. Okay, I think that answers other questions. Thank you very much, Mr. Tenbrook. Thanks to both counsel. The case is taken under advisement.